In the Matter of the Estate of WILLIAM W. DASHIELL, Deceased.

*Sussex, Nov. 21, 1935.*

*William M. Hope,* of the firm of Hope & Harmonson, for remaindermen.

*James H. Hughes, Jr.,* of the firm of Ward & Gray, for life beneficiaries.

THE CHANCELLOR: In this case the testator devised real estate consisting of town properties and farms to trustees, in trust to manage the same and to pay the net profits of the operations annually to his two daughters for life in equal parts, with provisions for disposition of one-half of the net profit in case of the death of one daughter to her children or issue during the life of the surviving daughter. Upon the death of the surviving daughter, the corpus of the trust was devised to designated remaindermen free of all trusts.

The trustees were authorized to conduct farming operations on the farms so long as a daughter lived. They were also authorized to rent the town properties. Expenses of various kinds necessary to the management of the properties and the operation of the farms were directed to be deducted from the income in order to ascertain the annual net income going to the daughters.

It is unnecessary to quote the will in full in that part of it which sets up the trust, which is quite lengthy. The town properties were numerous as were the farms, the latter being about twenty-five in number. The testator made no provision for working capital in the hands of the trustees. Evidently he considered that the real estate would supply sufficient yields in each year to meet all the necessary expenses.

The will also provided that when any timber on the farms reached such a state of maturity that its sale would be advantageous, the trustees might make sale thereof upon approval of the Chancellor. The proceeds of such sales were not to be held in trust. They were bequeathed to the two daughters absolutely in equal shares. Sales of timber during the period covered by the account yielded $12,600.00.

During every year of the period, there was a deficit in the operations, totalling something like $20,000.00 in round numbers.

The total payments made during the period by the trustee to the daughters was $2,600.00 to each—a total of $5,200.00. This was $7,400.00 less than the sum due them as the absolute legatees of the timber proceeds.

One of the original trustees died and the surviving trustee was permitted to resign. On exceptions to his account, he was surcharged to the extent of $22,711.13. A new trustee was appointed to administer the trust. The new trustee found among the assets turned over to him notes in the face amount of approximately $4,300.00. These notes were notes which had been given to the old trustee by tenants who, in the trustee's annual settlements with them, were unable to pay him the cash due. In each year the notes taken were less in face value than the amount of the deficit in operations.

The evidence shows that the $7,400.00 of timber proceeds was spent by the trustee in repairs and improvements upon the farms and town properties, and for expenses in their management.

The question presented by the pending exception is, How shall the tenant-notes be treated? They are claimed by the solicitor representing the remainderman as belonging to the principal of the trust, and by the solicitor for the daughters as belonging to them.

This is clear—while the notes represent income earned for the years in which they were respectively given, the payment of which had been merely deferred, they do not represent net income, because the deficits in operations for each year exceeded the face of the notes. As the life beneficiaries were entitled to receive only net income, neither the notes nor their proceeds when realized can be treated as belonging to the life beneficiaries as income.

But the life beneficiaries happen also to be the absolute legatees of timber proceeds. Such proceeds constituted no part of the trust estate. Regardless of the profit and loss condition of the trust for any year or succession of years, the sums realized from the sale of timber were payable to the daughters. When therefore the trustee expended $7,400.00 of cash realized from the sale of timber for expenses, repairs and improvements in the course of carrying on the business of the trust, he diverted funds from the daughters to purposes for which the daughters were in no sense liable.

The testator in creating the trust directed his trustees to carry on a business—the business of renting and managing town properties and, principally, of operating numerous farms. "Trust property which has been embarked in trade is primarily liable to creditors for debts, and will be applied as far as it will go to all liabilities." *Hill on Trustees*, (*4th Ed.*) *443. To the extent of the notes received from the tenants, cash was lacking to pay the debts incurred for expenses, repairs and improvements. Timber proceeds supplied cash in the amount of the notes for the payment of charges which, on the authority just cited, it was the duty of the corpus, in the absence of income, to bear. That being so, I am of the opinion that the parties

whose cash performed the obligations of the estate are entitled to receive the avails of the notes. Corpus has no equitable right to benefit from the notes as against those whose cash was used to discharge obligations which the taking of the notes thrust on the corpus. If corpus had paid the bills which, but for the taking of the notes, cash from the tenants would have paid, then it would be plain that when the money came in from the tenants' notes, corpus would be entitled to receive it. But such was not the case. The timber proceeds performed the duty of the corpus, and should be subrogated to the claims of the corpus against the notes. The case appears to be one where timber proceeds, in the amount of the notes, can be traced to specific assets which should discharge debts that were, as between corpus and timber legatees, the obligations of the former. If so, the latter, having paid the debts, should be awarded those specific assets in preference to the former.

There is no claim made, as indeed there could be none, that the trustee or (he now being deceased) his estate is able to make good to the timber beneficiaries the cash of theirs which he applied in operations.

There is another question which, though it is not raised by the pending exceptions, I feel called upon to notice and express my opinion upon. The question has been debated by the solicitors and, I suppose, will arise when the next account is filed. It would seem, then, advisable that I should state what follows to the end that the present trustee may be advised of how he should set up his next account in the particular about to be referred to and thus put the question, which has been rather fully discussed, in shape for a formal ruling if any party in interest should desire to press it by exceptions to the next account.

The question arises out of the surcharge of $22,711.13 which as before stated was decreed against the former trustee. The question is, How shall the amount of the recovery under the surcharge be treated as between the life beneficiaries and the remaindermen? There has already been

collected on account of the surcharge $1,500.00 in cash and a town residence, the home of the former trustee, said to be worth about $3,500.00. This of course is subject to costs and expenses incurred in its recovery.

Now the trustee had, as before stated, withheld from the testator's daughters (who were also the life beneficiaries under the trust) $7,400.00 which he had received as trustee but which belonged to them absolutely and was payable immediately upon the sale of the timber but was wrongfully diverted into general receipts of the trust whence it was disbursed to creditors of the trust. This sum is a part of the total of $22,711.13 with which the trustee was surcharged.

The trustee was empowered to sell town lots. Such lots were sold and yielded to the corpus of the trust a substantial amount of cash which was invested. But $12,500.00 of the investments were of such character as the trustee should never have considered as proper for a trust. A total loss was occasioned by these clearly indefensible investments. The amount surcharged included the loss so occasioned.

Thus we have a single surcharge or judgment, if common terminology may be used, in the amount of $22,711.13 which represents rights to compensation due to two claimants—the principal or corpus of the trust on the one hand and the daughters as owners of timber proceeds on the other. The trustee wronged them both and their respective claims are assertable against a single judgment against the trustee.

In that situation, it appears to me that on the principle that equality is equity, the two claimants should share in the proceeds of the money on a proportional basis.

As the timber money claimants have been allocated $4,300.00 of tenants' notes, their claim of $7,400.00 must be reduced by that amount in calculating the proportionate participation in the common recovery. If it be suggested

that the notes may never be collected and so the $7,400.00 should not be reduced by the amount of their face, it is to be remarked that the notes are thought to be collectible and $1,000.00 has already been paid on account thereof. At all events the final disposition of the question cannot as a practical proposition be very well deferred until some time in the future when time has at least demonstrated the collectibility or noncollectibility of the notes. The notes stand *pro tanto* in the place of timber proceeds as I have already endeavored to demonstrate, and I think if the daughters claim them as they have, and justly so, I think, they should take them at their face value.

This reduces their claim for purposes of participation in the recovery to $3,100.00. The proceeds of the recovery from the trustee should then be allocated on the basis of a claim of $12,500.00 in favor of the corpus and $3,100.00 in favor of the daughters. The fractions work out as $125/_{156}$ of the recovery to the corpus and $31/_{156}$ to the daughters.

The trustee should observe the principle of allotment just indicated in stating his next account. If any party in interest then desires to except to the manner in which the matter is proposed to be handled, he may do so and a formal ruling will be made.

Order in accordance with the foregoing.